U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2018 JAN 30  AM 11: 04

BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| TABITHA WAKEFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:17-cv-115 |
| | ) | |
| PHIL SCOTT, T.J. DONOVAN, | ) | |
| MATTHEW BIRMINGHAM, ZACHARY | ) | |
| GAUTHIER, TOM MARSH, STEVEN | ) | |
| NEILY,[1] and CHRISTOPHER LORA, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTIONS TO DISMISS**
**(Docs. 14, 23)**

Plaintiff Tabitha Wakefield, proceeding pro se, has filed a civil complaint against

Vermont Governor Phil Scott, Vermont Attorney General T.J. Donovan, Vermont State Police

Director Matthew Birmingham, Vermont State Police Officers Zachary Gauthier and Christopher

Lora, (collectively, the "State Defendants"), Windsor Town Manager Tom Marsh, and Windsor

Police Officer Steven Neily. (Doc. 4.) All Defendants are sued in their official and individual

capacities.

Plaintiff's claims stem from instances of alleged harassment during two separate motor

vehicle stops. The court dismissed many of Plaintiff's claims at screening under 28 U.S.C.

§ 1915(e)(2)(B). (*See* Doc. 3.) The claims that remain after screening are: a § 1983 claim and

three direct constitutional claims that are subsumed into it (Counts 1–4); conspiracy claims under

42 U.S.C. §§ 1985 and 1986 (Counts 5–6); and claims for negligent or intentional infliction of

---

[1] The caption is amended to reflect the correct spelling of Defendant Neily's last name.

emotional distress (Counts 17 and 21).[2] Currently pending are two motions to dismiss under Fed. R. Civ. P. 12(b)(6): one filed by Defendants Marsh and Neily (Doc. 14), and a second filed by the remaining Defendants (Doc. 23). Plaintiff has not filed an opposition to either motion.

## Background

Ms. Wakefield (who is white) alleges that she and her boyfriend, Sean Buckner (who is black), "get harassed by the police." (Doc. 4 at 2.) She asserts that when she and Mr. Buckner travel south of Massachusetts, the police "don't even look at us," but that they get harassed by the police in Massachusetts, New Hampshire, Vermont, and New York. (*Id.*) According to the complaint, "[t]he State Government knows of the things that have happened to me and support[s] the actions of the police." (*Id.*) Plaintiff asserts that "[t]he State of Vermont and the Town of Windsor hates us." (*Id.* at 7.)

The complaint recounts one incident of alleged harassment during a motor vehicle stop conducted by Officer Lora, and a second incident during a motor vehicle stop involving Officers Gauthier and Neily. (*Id.* at 2–3.) In the first incident, according to the complaint, Officer Lora pulled Ms. Wakefield and Mr. Buckner over and told them that he had done so because of a faulty registration. (*Id.* at 2.) Plaintiff alleges that the registration was not faulty. (*Id.*) She asserts that Officer Lora bruised her when he forcefully pulled her out of the car. (*Id.*)

The basis for the second stop was that Mr. Buckner had "flipped off" Officer Gauthier. (*Id.* at 3.) At the conclusion of that stop, as Plaintiff and Mr. Buckner were driving away, Ms. Wakefield said "hey one more thing" to Officer Gauthier and to Officer Neily (the latter having apparently arrived on the scene), and she "flipped them off." (*See id.*) Both officers

---

[2] The Roman numbered counts in the complaint are somewhat out of order: there is no count "IV," and there are two counts numbered "VII." The court refers to the numbered counts by the order in which they appear in the proposed complaint.

followed Plaintiff and Mr. Buckner, and they ultimately arrested Plaintiff for disorderly conduct, asserting that she was yelling profanities in the presence of women and children. (*Id.*) Ms. Wakefield further alleges that Officer Gauthier "illegally felt my breasts and it was not a proper search." (*Id.*)

## Analysis

### I.      Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). The court must draw all reasonable inferences in the non-moving party's favor. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000). Failure to oppose a Rule 12(b)(6) motion is not grounds to grant the motion; the court must still assess the complaint for legal sufficiency. *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000).

Although there are two separate motions to dismiss pending, both motions raise many substantially similar arguments. The court therefore organizes its discussion by topic rather than by particular group of defendants.

3

## II.    Section 1983 Claims (Counts 1–4)

### A.    Official-Capacity Claims Against Defendants Marsh and Neily

The court previously dismissed the § 1983 damages claims against the State Defendants in their official capacities. (Doc. 3 at 5.) Defendants Marsh and Neily now seek dismissal of the § 1983 claims against them in their official capacities. (Doc. 14 at 4.)

"A claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978)). The court therefore analyzes Plaintiff's official-capacity § 1983 damages claims against Defendants Marsh and Neily as claims against the Town of Windsor.[3]

"A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell*, 436 U.S. at 691). Thus, to hold a municipality liable under § 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Here, Plaintiff's complaint against the Town of Windsor appears to stem from an isolated

---

[3] The court focuses here on § 1983 *damages* claims because the general rule articulated in *Lore* does not apply to claims seeking injunctive relief to remedy an ongoing violation of federal law. *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 498 (N.D.N.Y. 2017).

4

instance of alleged unconstitutional conduct by Officer Neily in the course of a traffic stop. Such an isolated act by a non-policymaking municipal employee is "generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability." *Matusick*, 757 F.3d at 62 (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 82 (2d Cir. 2012)). But such isolated instances would be a basis for municipal liability if they were done

> pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Jones*, 691 F.3d at 81.

The only factual allegations potentially bearing on any such basis for municipal liability are the allegations that the police in New York and New England harass Plaintiff and Mr. Buckner when they are traveling together. The court infers that this is an allegation of racially motivated police conduct. "The Second Circuit has admonished that courts should 'not condone racially motivated police behavior' and must 'take seriously an allegation of racial profiling.'" *Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013) (quoting *United States v. Davis*, 11 F. App'x 16, 18 (2d Cir. 2001)). In this case, however, Plaintiff's "general and conclusory" allegations are insufficient to establish any plausible claim of municipal liability. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Plaintiff alleges no other specific conduct by Town of Windsor officials, nor does she cite any other facts or circumstances in support of any claim that a policy of racial profiling or racial animus exists in the town.

The court concludes that the complaint fails to allege any plausible basis for municipal liability under § 1983. Defendants Marsh and Neily are entitled to dismissal of the § 1983 damages claims against them in their official capacities.

5

## B.   Personal Involvement

Defendants Scott, Donovan, Birmingham, and Marsh seek dismissal of the § 1983 claims against them for lack of any allegations of their personal involvement. (Doc. 14 at 13; Doc. 23 at 3.) The court agrees that the § 1983 damages claims must be dismissed.

Section 1983 of Title 42 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)). "Rather, the 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Id.* (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).

Prior to the Supreme Court's decision in *Iqbal*, the Second Circuit held that:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). The Second Circuit has "not yet determined the contours of the supervisory liability test, including the gross negligence prong, after *Iqbal*." *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014). But it is unnecessary to do so here because the complaint fails to include any allegations that might plausibly pass any of the tests

6

for supervisory liability.  In fact, the complaint includes no allegations of any conduct whatsoever by Defendants Scott, Donovan, Birmingham, or Marsh.

Although the personal involvement doctrine defeats Plaintiff's claims for damages under § 1983, it does not apply to claims for declaratory or injunctive relief.  *See Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir. 1996) (lack of allegation of personal involvement defeated § 1983 monetary claim, but not claim for injunctive relief); *Bryan v. Menard*, No. 5:16-cv-157, 2017 WL 2964008, at \*5 (D. Vt. June 19, 2017), *report and recommendation adopted* 2017 WL 2964807 (D. Vt. July 10, 2017); *Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (defendant's lack of personal involvement precluded damages under § 1983, but plaintiff was not precluded from seeking prospective, injunctive relief against that defendant).  Here, Plaintiff expressly seeks injunctive relief.  (Doc. 4 at 7.)  The absence of allegations of any personal involvement by Defendants Scott, Donovan, Birmingham, or Marsh does not rule out that requested relief.

### C.     Fourteenth Amendment Claim (Count 3)

All of the Defendants argue that Plaintiff has failed to state a Fourteenth Amendment claim.  (Doc. 14 at 11; Doc. 23 at 4.)  The court agrees.  The allegations do not suggest any procedural due process violation.  To the extent that Plaintiff is claiming a substantive due process violation, those claims must be dismissed as duplicative of her Fourth Amendment claims challenging the traffic stops.  *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))); *Southerland v. City of N.Y.*, 680 F.3d

127, 159 (2d Cir. 2012) ("[S]ubstantive due process analysis is inappropriate if the claim is covered by the Fourth Amendment." (alterations and internal quotation marks omitted)).

The Fourteenth Amendment also includes an equal protection guarantee, which essentially directs "that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Defendants suggest that any equal protection claim fails because there is no claim of any discriminatory intent or action taken based on suspect classifications. (Doc. 14 at 12–13; Doc. 23 at 5.) The court agrees that the complaint fails to allege a plausible equal protection claim.

Initially, the court notes that the problem with Plaintiff's equal protection claim is not that the complaint is devoid of any suggestion of race-based discrimination or racial profiling. Plaintiff is white, but she alleges that the police in New York and New England harass her and her African-American boyfriend when they are traveling together. The complaint can fairly be construed as alleging that the traffic stops at issue were motivated by similar racial animus. Plaintiff is not a member of a racial minority, but that does not preclude her from claiming that she was treated differently as a result of race-based discrimination. *Cf. Lieberman v. Fine, Olin & Anderman, P.C.*, No. 00 CIV. 6533(JGK), 2002 WL 142198, at *3 n.1 (S.D.N.Y. Jan. 31, 2002) ("[A] Caucasian plaintiff can assert a claim under § 1981 if the plaintiff was discriminated against because of racial animus against a third party with whom the plaintiff was appropriately related.").

The problem with the equal protection claim is that the allegations fail to *plausibly* give rise to a claim of racially motivated discrimination. As this court previously stated in the context of a 2012 suit brought by Mr. Buckner, a discrimination claim must plead sufficient facts to "nudge [the] claims of invidious discrimination across the line from conceivable to plausible."

8

*Buckner v. Shumlin*, No. 1:12-cv-90-jgm, 2013 WL 6571814, at \*9 (D. Vt. Dec. 13, 2013)

(quoting *Iqbal*, 556 U.S. at 680). Plaintiff's allegations in this case suffer from the same defect

as Mr. Buckner's allegations in the 2012 suit: her allegations do "little more than cite to [her]

mistreatment and ask the court to conclude that it must have been related to . . . race." *Garzon v.*

*Jofaz Transp., Inc.*, No. 11-CV-5599(RRM)(VVP), 2013 WL 783088, at \*3 (E.D.N.Y. Mar. 1,

2013) (first alteration in original). Defendants are accordingly entitled to dismissal of Count 3.

## III.   Conspiracy Claims Under 42 U.S.C. §§ 1985 and 1986 (Counts 5 and 6)

All of the Defendants seek dismissal of Plaintiff's § 1985 and § 1986 claims, arguing that

Plaintiff has not alleged sufficient facts to satisfy the elements of a claim under § 1985, and that

her § 1986 claim accordingly also fails. (Doc. 14 at 10; Doc. 23 at 6.) For the reasons below,

the court agrees.

Section 1985 is comprised of three subsections. The complaint does not specify which

subsection(s) Plaintiff relies upon, so the court considers all three here. Together, the three

subsections of § 1985 proscribe conspiracies that interfere with:

> (a) the performance of official duties by federal officers; (b) the administration of
> justice in federal courts; (c) the administration of justice in state courts; (d) the
> private enjoyment of "equal protection of the laws" and "equal privileges and
> immunities under the laws"; and (e) the right to support candidates in federal
> elections.

*Kush v. Rutledge*, 460 U.S 719, 724 (1983). The civil remedy for a violation of any of the three

subsections of § 1985 is found at the end of § 1985(3). *Id.* Section 1985(1) prohibits

conspiracies that interfere with the performance of official duties by federal officers, and

§ 1985(2) prohibits conspiracies that interfere with the administration of justice in state and

federal courts. None of the allegations in Plaintiff's complaint suggest the types of conspiracies

proscribed by either of those subsections. The court accordingly analyzes whether the complaint

states a plausible claim under § 1985(3).

9

Part of a suite of Civil War Era civil rights legislation, § 1985(3) "imposes liability on two or more persons who 'conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting 42 U.S.C. § 1985(3)). As the Second Circuit has explained:

> A conspiracy claim under Section 1985(3) requires a plaintiff to allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."

*Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

Defendants argue that "Plaintiff has not alleged that she is a racial minority or that she suffered any racial or class-based animus." (Doc. 14 at 10; *see also* Doc. 24 at 7.) They maintain that "[t]he absence of any factual basis to support an allegation of racial animus is fatal" to any § 1985(3) claim. (Doc. 14 at 10; *see also* Doc. 24 at 7.) For the reasons stated above regarding Plaintiff's equal protection claim, the court agrees that the complaint fails to allege a plausible claim of racially motivated discrimination.

And Plaintiff's § 1985(3) claims suffer from a more fundamental problem: failure to allege facts sufficient to establish a "conspiracy." "Although a conspiracy need not be shown by proof of an explicit agreement, a plaintiff must demonstrate at least that parties have a tacit understanding to carry out the prohibited conduct." *Cine SK8*, 507 F.3d at 792 (internal quotation marks omitted). Here, the complaint alleges neither an explicit agreement nor a tacit understanding between any of the Defendants. At best, the complaint asserts only "conclusory,

10

vague, or general allegations of conspiracy"—insufficient to withstand a motion to dismiss. *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) (quoting *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983)).

Because the complaint fails to state a plausible § 1985 claim, it also fails to state a § 1986 claim. "Section 1986 imposes liability on an individual who has knowledge of discrimination prohibited under § 1985." *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996). "Hence, a § 1986 claim is contingent on a valid § 1985 claim." *Id.* Here, since Plaintiff has failed to plead a plausible § 1985 claim, her § 1986 claim also fails.

## IV.    State Law Claims (Counts 17 and 21)

Defendants Marsh and Neily do not explicitly address Plaintiff's state law claims.[4] The State Defendants argue that Count 17 and the negligence theory of Count 21 are barred by the Eleventh Amendment and the Vermont Tort Claims Act. (Doc. 23 at 8–9.)

As the court noted in its screening Order (Doc. 3), "[t]he Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sciences*, 804 F.3d 178, 193 (2d Cir. 2015). In this case, neither the waiver nor abrogation exception applies, since Vermont has not waived its immunity, *see* 12 V.S.A. § 5601(g), and Congress has not abrogated Vermont's immunity by statute. *Cf. Shine v. Hofman*, 548 F. Supp. 2d 112, 122 (D. Vt. 2008) ("There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities

---

[4] Defendants Marsh and Neily have not raised the doctrine of municipal immunity, and the court does not consider it here.

11

such as state sovereign immunity when it enacted § 1983." (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989))). The Eleventh Amendment therefore bars Plaintiff's tort claims for damages against the State Defendants in their official capacities.

The State Defendants also seek dismissal of Count 17 and the negligence theory of Count 21 against them in their individual capacities under 12 V.S.A. § 5602. (Doc. 23 at 9.) Count 17 reads: "12 VSA 5601(a) – Liability of State[.] Charge the State of Vermont." (Doc. 4 at 5.) Count 21 alleges "Intentional/Negligent infliction of emotional distress." (*Id.* at 6.)

No allegations suggest that the State Defendants acted or failed to act other than while in the scope of their employment. To the extent that Count 17 is a negligence claim against the State Defendants, dismissal is therefore appropriate because Vermont state employees acting within the scope of their employment cannot be held liable for injuries caused by negligence; the exclusive right of action lies against the State. 12 V.S.A. § 5602; *see also Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 6, 184 Vt. 1, 955 A.2d 1082; *Powers v. Office of Child Support*, 173 Vt. 390, 398, 795 A.2d 1259, 1265 (2002). This conclusion also applies to the aspect of Count 21 against those Defendants alleging negligent infliction of emotional distress.[5]

## V.    Leave to Amend

The Second Circuit has held that district courts should not dismiss the claim of a self-represented party without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so

---

[5] Section 5602 does not apply to willful misconduct, 12 V.S.A. § 5602(b), and the State Defendants have not moved for dismissal under § 5602 of the aspect of Count 21 alleging intentional infliction of emotional distress.

12

requires."). However, leave to amend the complaint is not required where an amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

Here, leave to amend would be futile as to Counts 17 and 21 insofar as they are tort claims for damages against Defendants Scott, Donovan, Birmingham, Gauthier, and Lora in their official capacities. Better pleading will not alter the Eleventh Amendment's bar on those claims. Similarly, better pleading will not alter the operation of 12 V.S.A. § 5602. Leave to amend would therefore also be futile as to Count 17 (to the extent it is a negligence claim against the State Defendants) and the negligence portion of Count 21 against those defendants.

Otherwise, Plaintiff may be able to state plausible claims by naming different defendants or by adding enhanced factual allegations. The court will therefore grant leave to amend. An amended complaint, if filed, should be titled "Amended Complaint" and should set forth all allegations against all defendants in separately numbered paragraphs, as it will supersede and replace the proposed original complaint in all respects. Failure to timely file an Amended Complaint will result in dismissal with prejudice of the claims dismissed herein.

## Conclusion

**Disposition of Motions.** Defendant Tom Marsh's Motion to Dismiss and Defendant Steven Neily's Partial Motion to dismiss (Doc. 14) and the State Defendants' Motion to Dismiss (Doc. 23) are GRANTED IN PART and DENIED IN PART. Counts 3, 5, and 6 are DISMISSED. Counts 1, 2, and 4 are DISMISSED insofar as those counts seek damages against Defendants Marsh and Neily in their official capacities. Counts 1, 2, and 4 are also DISMISSED insofar as they seek damages against Defendants Scott, Donovan, Birmingham, and Marsh.

13

Counts 17 and 21 are DISMISSED insofar as they are tort claims for damages against Defendants Scott, Donovan, Birmingham, Gauthier, and Lora in their official capacities. Count 17 is DISMISSED insofar as it is a negligence claim asserted against Defendants Scott, Donovan, Birmingham, Gauthier, and Lora in their individual capacities. Count 21 is DISMISSED insofar as it is a claim for negligent infliction of emotional distress against Defendants Scott, Donovan, Birmingham, Gauthier, and Lora.

**Summary of Remaining Claims.** The claims that currently remain are:

- Counts 1, 2, and 4, comprising § 1983 official-capacity claims for prospective declaratory or injunctive relief (against all Defendants) and individual-capacity claims for damages (against Defendants Gauthier, Lora, and Neily);

- Count 17, in its entirety against Defendants Marsh and Neily, and only to the extent it is an individual-capacity claim for gross negligence or willful misconduct against the remaining Defendants;

- Count 21, in its entirety against Defendants Marsh and Neily, and only to the extent it is an individual-capacity claim for intentional infliction of emotional distress against the remaining Defendants.

**Leave to Amend.** Apart from the portions of Counts 17 and 21 that are dismissed, leave to amend is granted and Plaintiff is allowed 30 days from the date of this order to file an Amended Complaint. Failure to file an Amended Complaint will result in the dismissal with prejudice of the claims dismissed herein.

Dated at Rutland, in the District of Vermont, this 30 day of January, 2018.

Geoffrey W. Crawford, Chief Judge
United States District Court

14